No. 35,426

In the Matter of the Application for a Writ of Habeas Corpus. (FLOYD BREWER, *Petitioner*, v. MILTON F. AMRINE, Warden of the Kansas State Penitentiary, *Respondent.*)

(127 P. 2d 447)

Opinion filed July 11, 1942.

*Edwin J. Holman,* of Leavenworth, argued the cause for the petitioner.

*Jay Kyle,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, was on the briefs for the respondent.

The opinion of the court was delivered by

SMITH, J.: This is an application for a writ of habeas corpus by one who has for the last fourteen years been serving a term of life imprisonment for murder in the first degree.

On February 14, 1942, this court made an order and handed down an opinion in which it held that certain grounds relied upon for the petitioner did not entitle him to a writ of habeas corpus. In this order, however, the court pointed out that the petitioner had alleged that he was without the assistance of counsel for his defense at the time he pleaded guilty, and that he did not waive his constitutional right to the assistance of counsel, and that he was not advised of his constitutional right of counsel. The order provided that under authority of G. S. 1935, 60-2204 and 60-2212, a justice of this court should hold a public hearing in a room in the state prison upon these questions of fact.

Accordingly a justice of this court did proceed to the state penitentiary at Lansing on May 2, 1942, due notice of the hearing having been given the petitioner and his counsel and the attorney general. At the request of petitioner a reputable, competent lawyer was appointed to represent petitioner at this hearing. Subpoenas were issued for witnesses requested by the petitioner and on behalf of the respondent. These witnesses and the petitioner and counsel presented themselves and the hearing was had.

It appears from the evidence that on August 16, 1927, the petitioner, together with two other men, was in what was known as the "bull pen" of the county jail of Sedgwick county, in Wichita, being held for trial on a charge of highway robbery; that some time that day a jailer was murdered in the "bull pen." It appears that the petitioner and his two companions were immediately arrested on a charge of murder in the first degree; that they were taken before the judge of the city court on August 22, 1927; that they waived their preliminary and on the same day pleaded guilty to a charge of murder in the first degree in the district court of Sedgwick county; that a sentence of life imprisonment was imposed and they started to the penitentiary at Lansing that day and arrived there the 23d and have been there since that time.

The petitioner and his two companions testified at this hearing.

The petitioner testified that the three men were handcuffed together when they appeared before the judge to enter their plea. He also testified that the judge asked Jim Morris, that is, one of the three, if they had been informed of what they had been charged with, and that Morris told the judge that they had been informed by the county attorney that they had been charged with first-degree murder. He testified that the judge asked if they had an attorney and they told him "No." He then testified that between the 16th of August and the 22d he asked the sheriff for a lawyer and that the sheriff said, "You won't get any lawyer; you will stay in this hole until you plead guilty to this charge." He also testified that one Bill Lee came to see him; that he did not ask him to help secure counsel because he did not want to ask him to do that. He also testified that he thought he had a right to counsel if he could pay for one; did not know he had a right to have a lawyer without paying him. He testified that he had been in the penitentiary once for murder; that he had a lawyer then whom his father hired for him; and that he had been serving a term for assault and did not have counsel and did not know he could have counsel unless he had the money.

Jim Morris, who was one of the three, and who is confined in the penitentiary, testified about as petitioner had testified except that he said the judge asked them if they had anything to say before they passed sentence upon them.

Cornelius Blythe, alias Bill Bradshaw, another of the three, testified to about the same effect.

The man who was county attorney at the time these events transpired was serving with the armed forces at the time of the hearing and was not available as a witness.

The affidavit of Bill Lee, to the effect that he called on petitioner in the jail and had trouble getting in to see him, that Brewer had told him he had no money to employ counsel, and did not have time to do so because that was Thursday and the hearing was set for the following Monday, was introduced. Respondent agreed that the affidavit might be admitted as to what his testimony would be if he were present. It was so treated by the justice before whom the hearing was had.

The official court reporter, who was present when the plea was entered, testified for the respondent that as to his best recollection these men were brought into court, but were not handcuffed together

when they appeared before the judge; that the judge told them what they were charged with and asked them to plead guilty or not guilty, and Brewer told him he would plead guilty of first-degree murder. He also testified that the general practice of this particular judge was that if a prisoner wanted to plead guilty he asked prisoner if he understood the charge and if he had consulted counsel and then whether or not he had pleaded guilty or not guilty. He also testified that the court asked these men if they had consulted a lawyer and that one of the three men answered he had. He could not say whether the other two said anything—they might have shaken their heads or nodded. His recollection was that it was Brewer who said he had consulted a lawyer.

The man who was deputy county attorney at the time these events transpired testified that after the murder of the jailer the three men were kept together in a cell in the Sedgwick county jail; that he and another man took a position between the wall of that cell and the wall of the next cell where they could hear the conversation of the three men without being seen; that Morris said he had consulted a lawyer named Ward (practicing in Wichita at that time, but since deceased); that after Morris consulted Ward he came back to the cell and the three of them decided to plead guilty; that he heard the conversation of the three men and they made up their minds to plead guilty after talking to each other in the jail; that at the time they pleaded guilty Morris was to the right of the judge, Bradshaw was in the middle and Brewer on the left; that the judge asked Morris first if he wanted to enter a plea of guilty, and Morris said "Yes"; then the judge said, "Do you want your attorney to come up here?" and Morris said, "No, we have already talked to him;" that the judge then asked Bill Bradshaw the same questions and then asked Brewer and received the same answers, although it was the impression of the witness that at the time the judge talked to Brewer he did not emphasize the matter as much as he had in talking to the other two; that Brewer did not say a word except that he wanted to plead guilty; that he had never asked the witness for help in getting a lawyer; that he had listened to these men in the cell and they had agreed that Morris was to be the spokesman for the three of them. This was about all of the pertinent testimony that was offered at the hearing.

Where one accused of crime has pleaded guilty and the judgment of the court has been entered sentencing him following the plea of

guilty when collaterally attacked the judgment carries with it a presumption of regularity. The burden rests upon the one accused of crime who is attacking the judgment by an application for a writ of habeas corpus on the ground that he was denied counsel to establish by competent evidence that he did not have counsel to represent him or he did not waive his right. It is a right that may be waived the same as many others. (See *Loftis v. Amrine,* 152 Kan. 464, 105 P. 2d 890; also *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461.) In *Loftis v. Amrine* this court reviewed a record that had been made before a trial judge in this state in an application for a writ of habeas corpus. There we said:

"We are not able to say that in this case, considering all the record, the petitioner did not intelligently and competently waive his right to counsel, and we are certain that he did not meet the burden of convincing the trial court of Leavenworth county that he had not so waived. It is concluded, therefore, that the petitioner is not entitled to be released from the penitentiary on this ground." (p. 467.)

In *Fairce v. Amrine,* 154 Kan. 618, 121 P. 2d 256, this court said:

"In the conduct of the trial of one charged with crime under the laws of this state the court, the prosecuting attorney and defendant are governed by our constitution and statutes. Under our constitution (Bill of Rights, § 10) an 'accused shall be allowed to appear and defend in person, or by counsel,' and to be tried by a jury. These are privileges which may be waived. (*In re Mote,* 98 Kan. 804, 160 Pac. 223; *Loftis v. Amrine,* 152 Kan. 464, 105 P. 2d 890.) Our statute then in force (G. S. 1935, 62-1304, since amended by Laws 1941, ch. 291, § 1) required the court to assign counsel to an accused 'at his request.' There is no evidence in this case that the petitioner requested the court to assign to him counsel. On the other hand, there is positive evidence that the court advised him of his right to be represented by counsel and inquired of him if he desired counsel." (p. 627.)

In *Johnson v. Zerbst,* supra, the court said:

"When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ." (p. 468.)

Where a justice of this court holds a hearing on such a disputed question the same burden rests upon the petitioner that rests upon him where the hearing is had before the trial judge.

In this proceeding the fact that the petitioner had been involved in other prosecutions, his own testimony and the testimony of his confederates as to the colloquy between themselves and the court at the time they were sentenced, together with the testimony of the court reporter as to what happened at the time the sentence and the testimony of the deputy county attorney as to the conversations between the petitioner and his two alleged confederates between the time the murder was committed and the time of their arraignment and plea, lead us to the conclusion that the petitioner in this case did know and did actually waive his right to be represented by counsel. The entire result certainly falls short of proving that he did not.

The judgment of this court, therefore, is that the application for a writ of habeas corpus should be denied. It is so ordered.