[File No. Cr. 205]

JOSEPH MAZAKAHOMNI, Petitioner, v. STATE OF
NORTH DAKOTA, Respondent

(25 NW2d 772)

74

Opinion filed January 6, 1947. Rehearing denied January 18, 1947.

*Nels G. Johnson,* Attorney General, *I. A. Acker,* Assistant Attorney General, and *Obert C. Teigen,* State's Attorney, for respondent.

*Strutz & Jansonius,* for petitioner.

MORRIS, J.   Joseph Mazakahomni has petitioned this court for an appropriate writ in the nature of habeas corpus.   He seeks his release from the State Penitentiary to which he was committed to serve a life sentence for first degree murder pronounced by Hon. C. W. Buttz, Judge of the District Court of Ramsey County, North Dakota, on November 25, 1936.   The petitioner attacks the validity of the judgment upon which his sentence is based as being rendered in violation of his constitutional rights.   He sets forth four grounds substantially as follows:

1. That he was not accorded the right to assistance of counsel in any substantial sense as provided by the Constitution of the United States and the State of North Dakota.

2. That he was not informed of his constitutional rights as provided by law, and that no formal sentence was passed upon him.

3. That the court failed to comply with the provisions of the statute in accepting the petitioner's plea and in the determination of the punishment to be given and further that because of the evasive and qualifying statements made relative to the commission of the crime by petitioner through his counsel it

was the duty of the court to reject the plea of guilty, order a plea of not guilty entered and put the petitioner on trial.

4. That the imprisonment is illegal in that the order and sentence of the court was in excess of its jurisdiction in that the defendant in his plea did not designate whether he was guilty of murder in the first degree and that the plea was indefinite and did not comply with Section 9480, Comp Laws ND 1913 (§ 12–2722, Rev Code ND 1943).

The record discloses that the petitioner was brought before the District Court of Ramsey County at about 3 P. M., November 25, 1936, at which time the State's Attorney asked leave to file a criminal information, charging the petitioner with murder in the first degree of one Alva Iron Bear on November 21, 1936. The deceased was an Indian girl about thirteen years of age. After granting permission to file the information the court inquired of the petitioner concerning his financial ability to employ a lawyer. The petitioner said that he had no money or personal property. The court then stated that before further proceedings were had he would appoint an attorney to consult with the petitioner. The attorney that the Court first sought to appoint was unable to accept the appointment because of an official position that he then occupied. The court then said to another member of the Bar who was present:

"Mr. Adamson, Mr. Mazakahomni, this young man, is charged with murder in the first degree in an information just filed in this court, and while he is ready, I understand, to plead guilty and ready to sign a written confession, I have not permitted him to do that until he has an opportunity to consult a lawyer in view of the enormity of the charge, and if you will accept the appointment I will appoint you as counsel for the defendant."

Mr. Adamson accepted the appointment and was handed a copy of the information. He and the petitioner retired to a private room and consulted. After their return to the court room the record shows that the following took place:

"Mr. Adamson: The defendant at this time desires to enter a plea of guilty to the information filed against him, and in

behalf of the defendant I would like to make a statement when the Court is pleased to hear it.

"The Court: All right, after the plea. You have gone over the facts with Mr. Mazakahomni, have you?

"Mr. Adamson: I have gone over the facts with him and he tells me he has signed a confession and that that was procured without any duress whatsoever, and he has also stated that he is guilty as charged, but that he did not intend it and was drunk at the time, and he is only nineteen years old. That fact might be taken into consideration hereafter by the Parole Board, but so far as the Court is concerned, all the Court can do is to pass sentence on the crime charged.

"The Court: You are satisfied—

"Mr. Adamson: I am satisfied that the defendant here is taking the right course and that all he can do is to enter a plea of guilty in view of the record now and his confession and his statement to me that there was no duress in obtaining the confession.

"The Court: You are satisfied that regardless of the confession that the facts as he details them to you warrant a charge of murder in the first degree?

"Mr. Adamson: I am, Your Honor.

"The Court: All right, you may proceed. You may sign the written confession then, if you desire."

The defendant then signed the following written confession in open court:

"Confession of Guilt

I, the defendant named above do hereby confess that I am guilty of the crime charged in the information, to-wit: murder in the first degree and committed as therein set forth, within the County of Ramsey and State of North Dakota, and I hereby waive preliminary examination and desire forthwith to be permitted to enter a plea of guilty, and I ask for immediate arraignment and sentence.

Dated November 25, 1936            Joseph Mazakahomni
                                              Defendant."

The information was read to the petitioner after which the following proceedings took place:

"The Court: Mr. Mazakahomni, murder in the first degree is punishable in this state by imprisonment in the State Penitentiary for life, and if you plead guilty your punishment must under the law be fixed at imprisonment in the State Penitentiary for life. The court has no choice about that. You have heard what counsel has said in your presence and in the presence of the Court. You have talked this over with Mr. Adamson, have you?

A. Yes, sir.

"The Court: You have told him all about it that you know, have you? You told him all the facts, did you?

A. Yes, sir.

"The Court: Are you ready to plead at this time, Mr. Adamson?

"Mr. Adamson: We are ready to plead.

"The Court: You are ready to plead, are you, Mr. Mazakahomni?

A. Yes, sir.

"The Court: Do you plead guilty or not guilty to the crime of murder in the first degree as charged in this information just read to you?

A. Guilty.

"The Court: You desire to plead guilty to the crime of murder in the first degree, do you?

A. Yes, sir.

"The Court: And you do so plead?

A. Yes, sir.

"The Court: Let the record show the defendant pleads guilty to the crime of murder in the first degree as charged in the information filed in this case, and which has just been read to him. (To Mr. Adamson) That is the plea you believe your client should enter, Mr. Adamson?

"Mr. Adamson: That is the plea.

"The Court: You told me, Mr. Adamson, that you desired to make a statement on behalf of the defendant for the record,

and that while it hadn't anything to do with the punishment that this Court must inflict, that nevertheless you thought it might have something to do with and would have something to do with the future of the case should it come before the Pardon or Parole Board. You may make such a statement.

"Mr. Adamson: In the report the Court must make in connection with this sentence I would ask that the record show that this boy was only nineteen years old at the time of the commission of the crime, and was under the influence of intoxicating liquor.

"The Court: Anything else?

"Mr. Adamson: I might suggest that the record also show that at the time of the arraignment and plea here that he was represented by me and that I also appeared at the preliminary hearing for him.

"The Court: You did appear for him?

"Mr. Adamson: I volunteered my services at the preliminary hearing and I believe his rights have been fully protected.

"The Court: Is there anything you care to say on the record, Mr. State's Attorney, in connection with what Mr. Adamson has just said?

"Mr. Thompson: If the Court please, it is true that the defendant claims to be nineteen years of age. I do not know that it makes any particular difference, and yet the records at Fort Totten, where he is enrolled, show that he was twenty-two years of age this last August. Now, whether those records are in error or he is mistaken in his age, I do not know."

The court next proceeded to question the Sheriff, State's Attorney and a special agent of the Federal Bureau of Investigation who had also investigated the case with reference to the details of the crime. There was introduced into the record another confession written by the petitioner in his own handwriting and signed on November 23, 1936. This confession is as follows:

"I Joe Mazakahomni went to Joe Sidney's and stayed at Sidney's for about 3 hours when Alva Iron Bear came down with Mrs. Jerome Smith. I stayed in the house about an hour after she came there then we both went out in the back of the house.

I Joe Mazakahomni asked her if I couldn't have intercourse and she said yes. Then we stayed there and talked. She told me she'd report me to her parents—I tried to talk her out of it at first—but she wouldn't listen so I choked her and then I dragged her out in the pasture—and came back to the house where I stayed. This was about ten o'clock in the evening. About twelve o'clock I went back and dragged her back near the toilet. Then I went back into the house and reported. Then I went up and notified the police and went back with the police. The police brought me back and locked me up.

Joe Mazakahomni

This happened Saturday night

November 21st — 1936."

The petitioner is of Indian descent. His handwriting is good and his use of English such as would indicate that he is a young man of at least fair intelligence. The record shows that he is a high school graduate.

It also appears that after the petitioner had committed the crime as indicated in his confession, he dragged her body into an old lake bed overgrown with weeds, which he designates in his confession as a pasture. He then went back to the house and stayed about two hours after which he went out again and dragged the body 580 feet back to a point near the Sidney house and left it on a pile of fresh earth that had come from an excavation made for an outdoor toilet. He pretended to have found the body there and notified other people in the house and later notified the police. He did not admit the crime until the following day when his rubbers were found covered with mud and concealed beneath the toilet seat.

It is well settled in this State that a writ of habeas corpus cannot be utilized as a substitute for an appeal. The inquiry in this proceeding is limited to questions of jurisdiction and we may only inquire into the correctness of the acts of the court to the extent of determining whether it acted within its jurisdiction. State ex rel. Smith v. Lee, 53 ND 86, 205 NW 314; State v. Floyd, 22 ND 183, 132 NW 662; Re Solberg, 52 ND 518, 203 NW 898; State v. Barnes, 29 ND 164, 150 NW 557, Ann

Cas 1917C 762; State ex rel. Styles v. Beaverstad, 12 ND 527, 97 NW 548; State ex rel. Neville v. Overby, 54 ND 295, 209 NW 552; Cook v. State, 54 ND 178, 208 NW 977; Re Cook, 54 ND 193, 209 NW 231; Ryan v. Nygaard, 70 ND 687, 297 NW 694; Sections 32–2202 and 32–2217, Rev Code ND 1943.

The petitioner is imprisoned under a judgment of conviction. Unless the court was without jurisdiction to render that particular judgment and it is void and not merely voidable, no relief can be had in this proceeding. The petitioner contends that the judgment is void because during the proceedings leading up to its rendition his personal constitutional guarantees were violated. He asserts that he is being deprived of his liberty without due process of law in contravention of the Fourteenth Amendment of the United States Constitution and that the proceedings which culminated in his incarceration were had in violation of § 13 of the North Dakota Constitution, which provides:

"In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

The petitioner insists that he was deprived of the effective assistance of counsel and that this violation of his constitutional rights divested the court of jurisdiction with the result that the judgment of the court is void.

Counsel for petitioner, among numerous other cases, cites Johnson v. Zerbst, 304 US 458, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357, wherein the United States Supreme Court held that in the federal courts habeas corpus is an available remedy to one who, without having effectively waived his constitutional right to the assistance of counsel, has been deprived thereof and to whom an application for a new trial or an appeal is not available because of the expiration of time. He also cites Wilcoxon

v. Aldredge, 192 Ga 634, 15 SE2d 873, 146 ALR 365, which also holds that the failure of the court to afford a defendant benefit of counsel in violation of his constitutional right thereto is a good ground for the issuance of a writ of habeas corpus.

Since the decision of Johnson v. Zerbst (US) supra, the courts of other states besides Georgia have shown an inclination to follow the expansion indicated by the United States Supreme Court. See Loftis v. Amrine, 152 Kan 464, 105 P2d 890; Brewer v. Amrine, 155 Kan 525, 127 P2d 447; People ex rel. Moore v. Hunt, 258 App Div 24, 16 NYS2d 25; Ex parte Barnett, 67 Okla Crim 300, 94 P2d 18; Ex parte Meadows, 71 Okla Crim 353, 112 P2d 419; Ex parte Wade, 82 Okla Crim 215, 167 P2d 920; Ex parte Farmer, 123 W Va 304, 14 SE2d 910; Ex parte Kramer, 61 Nev 174, 122 P2d.862; State v. Haas, 69 SD 204, 8 NW2d 569; State ex rel. Henning v. Jameson, (SD) 22 NW2d 731; State ex rel. Baker v. Utecht, 221 Minn 145, 21 NW2d 328.

The provisions of the Sixth Amendment of the United States Constitution guaranteeing to a defendant in a criminal case the privilege to appear by counsel and the guarantee of due process of law under the Fifth Amendment are not limitations upon the powers of states but operate upon the Federal Government only and apply to trials in the Federal courts. The due process clause of the Fourteenth Amendment, identical in language to that of the Fifth, is applicable to the states and to due process of law as administered by state courts.

In Hawk v. Olson (upon certiorari to the Supreme Court of Nebraska), 326 US 271, 90 L ed 61, 66 S Ct 116, it is held that denial of effective assistance of counsel violates the due process clause of the Fourteenth Amendment to the United States Constitution. Cited as authority are Powell v. Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55, 84 ALR 527, and House v. Mayo, 324 US 42, 89 L ed 739, 65 S Ct 517. In the course of the opinion the court says, "We hold that denial of opportunity to consult with counsel on any material step after indictment or similar charge and arraignment violates the Fourteenth Amendment." After the case was remanded to the Supreme Court of Nebraska it

held in Hawk v. Olson, 146 Neb 875, 22 NW2d 136, that it is for the Supreme Court of that state to decide what issues are justiciable in an application for a writ of habeas corpus made to the state courts and denied a motion that the judgment of the United States Supreme Court be enforced and that the Nebraska Supreme Court issue a mandate to the district court to issue a writ of habeas corpus directing that the petitioner be produced for hearing upon his allegations in the petition. The court states the scope and limits of the remedy of habeas corpus in Nebraska as follows:

"Those rules are: To release a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void. Habeas corpus will not lie to discharge a person from a sentence of penal servitude where the court imposing the sentence had jurisdiction of the offense, had jurisdiction of the person of the defendant, and the sentence was within the power of the court to impose. Such a judgment is not void. Habeas corpus cannot be used as a substitute for a writ of error. Habeas corpus is a collateral and not a direct proceeding when regarded as a means of attack upon a judgment sentencing a defendant. The regularity of the proceedings leading up to a sentence in a criminal case cannot be inquired into on an application for a writ of habeas corpus, that matter being assailable only in a direct proceeding. When the judgment is regular upon its face and was given in an action where the court had jurisdiction of the offense and of the person of the defendant, extrinsic evidence is not admissible to show its invalidity."

The court further says:

"We are of the opinion that denial of the petitioner's motion is not inconsistent with the mandate of the Supreme Court of the United States. The existence of the right is one matter; the availability of a particular remedy in which that right may be asserted is distinctly a separate matter. They are not interdependent, nor intermingled. The decision of the one does not depend upon the decision of the other. A determination of the

federal question does not determine the question arising under state law."

Thus it is apparent that in Nebraska there has been no expansion by judicial construction of the scope of the remedy available upon an application for writ of habeas corpus. See also Smith v. Buchanan, 291 Ky 44, 163 SW2d 5, 145 ALR 813.

Under the facts presented in the case now before us we do not deem it imperative to determine to what extent or if at all a petitioner may assert, in a habeas corpus proceeding, the failure to be accorded effective representation by counsel as a violation of his constitutional right to due process of law when the time for appeal and for moving for a new trial has expired. In this case he was accorded representation by counsel and waived his further right to trial by making two confessions and entering a plea of guilty, all of which was done voluntarily.

In the recent case of Diggs v. Welch, 80 App DC 5, 148 F2d 667, cert den 325 US 889, 89 L ed 2002, 65 S Ct 1576, the petitioner sought a writ of habeas corpus on the ground that the attorney appointed to represent him gave him such bad advice through negligence or ignorance in connection with entering his plea of guilty that he could not have been said to have been represented by effective or competent counsel. Because of the similarity of that case to the one now before us we quote extensively from that opinion:

"It is clear that once competent counsel is appointed his subsequent negligence does not deprive the accused of any right under the Sixth Amendment. All that amendment requires is that the accused shall have the assistance of counsel. It does not mean that the constitutional rights of the defendant are impaired by counsel's mistakes subsequent to a proper appointment.

"The petitioner here must, therefore, rely upon the due process clause of the Federal Constitution which guarantees him a fair trial. But to justify habeas corpus on that ground an extreme case must be disclosed. It must be shown that the proceedings were a farce and a mockery of justice. No doubt in such cases careless representation of the defendant by his attor-

ney may contribute to the lack of due process of the trial as a whole. But if so, it is only one of the factors leading to the violation of petitioner's constitutional rights. In such a case the court has neglected its duty in failing to give the accused protection. The prosecuting attorneys have violated their duty as officers of the court in obtaining a conviction by proceeding in defiance of the orderly administration of justice. Carelessness of counsel is not the ground for habeas corpus in such a case. If relied on it must be as one of the evidentiary facts which, coupled with others, show a violation of the Fifth Amendment.

"The Supreme Court has been jealous in preserving the right of every accused to a fair trial. It has held that a defendant's right to assistance by counsel is not satisfied by the mere formality of an appointment of an attorney by the court. There must be 'effective' representation. We are aware that if that word be construed in a broad and liberal sense it would follow that on habeas corpus the court would have to review the entire trial and consider all the alleged mistakes, failures to object to the introduction of evidence and errors in advice which the ingenuity of a convict could set down on paper during the enforced leisure of his confinement. This would become necessary under the ruling of the Supreme Court that a hearing must be held on a petition for habeas corpus which contains allegations sufficient on their face regardless of their improbability.

"The result of such an interpretation would be to give any Federal prisoner a hearing after his conviction in order to air his charges against the attorney who formerly represented him. It is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions. Convicts are not subject to the deterrents of prosecution for perjury and contempt of court which affect ordinary litigants. The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. In many cases there is no written transcript and so he has a clear field for the exercise of his imagination. He may realize that his allegations will not be believed but the relief from monotony offered by a hearing in court is well worth the trouble of writing them down. To allow a prison-

er to try the issue of the effectiveness of his counsel under a liberal definition of that phrase is to give every convict the privilege of opening a Pandora's box of accusations which trial courts near large penal institutions would be compelled to hear.

"Moreover, even if the allegations of mistakes on the part of counsel happen to be true it is not practical to review them on habeas corpus except as details in a larger picture. Few trials are free from mistakes of counsel. How much these mistakes contributed to the result can never be measured. There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective. The only practical standard for habeas corpus is the presence or absence of judicial character in the proceedings as a whole."

See also Dorsey v. Gill, 80 App DC 9, 148 F2d 857.

A defendant in a criminal case is entitled, by virtue of our Constitution and statutes, to defend in person and by counsel, to have a copy of the indictment or information, to meet the witnesses against him face to face, to have process to compel the attendance of witnesses in his behalf, and to a speedy public trial by an impartial jury. He may not be twice put in jeopardy nor be compelled to be a witness against himself.

Our Constitution does not require that counsel shall be furnished by the state if the defendant appears without one. The statute, however, Sections 29–1303, Rev Code ND 1943, requires the assignment of counsel by the court if the defendant desires and is unable to employ counsel. The right to assignment of counsel springs from the statute and not from the Constitution.

In this case the defendant had prior to arraignment written out and signed a confession. He had indicated a desire to plead guilty to murder in the first degree, a charge which was amply supported by confession. He appeared at his arraignment without counsel. Inquiry by the court disclosed that the petitioner had not the means wherewith to employ counsel. The court declined to proceed further until he had made an assignment. He then assigned Mr. Adamson who was an attorney with many years of experience as a practitioner before that court. No

charge is made that counsel so assigned was generally incompetent. The complaint is that in this case by advising and permitting the petitioner to plead guilty he failed to render him that assistance contemplated by the Constitution with the result that the petitioner was not accorded due process of law.

It is argued that counsel should have taken more time than he did to consult with and advise his client and that counsel's statement to the court ". . . and he has also stated that he is guilty as charged, but that he did not intend it and was drunk at the time, and he is only nineteen years old" established counsel's incompetence in this particular matter. It is also argued that this statement indicates a lack of premeditation on the part of the petitioner and that he, therefore, did not admit that he had committed murder in the first degree despite his plea of guilty.

The argument that the brevity of the consultation between counsel and client indicates a disregard for duty on counsel's part and a failure to safeguard the interest of his client loses force upon consideration of the fact that counsel had appeared for the petitioner at his preliminary hearing and thus had prior knowledge of the facts including the handwritten confession. Moreover, the record indicates a crime of simple detail. The ascertainment of facts by counsel from his client would not require a lengthy conference.

A general challenge to the validity of the judgment is based on the contention that the record of the entire proceeding, with emphasis on counsel's statement of his client's intoxication and lack of intent, indicates a failure to accord the petitioner due process of law. However, in considering this aspect of the case we must bear in mind that the inquiry of this proceeding goes to the jurisdiction of the court and to that alone.

State v. Layer, 48 ND 366, 184 NW 666, involved an appeal from a judgment of conviction and from an order denying a motion by the defendant to withdraw a plea of guilty. The defendant had pleaded guilty to murder in the first degree. He was not represented by counsel and had declined the trial court's offer to appoint one. In affirming the judgment this court said:

"It is true, as contended by the defendant in his brief, that under the constitution, one charged with crime is entitled to a trial by the jury, that he is presumed innocent until proven guilty, and that the state must prove him guilty beyond a reasonable doubt. It is likewise true that the defendant is the only person who can waive such rights. It is the law, however, in this state that the defendant has the right to waive, and the state to receive such waiver on the defendant's plea of guilty, and that upon such plea he may lawfully be convicted and imprisoned. It is likewise true that such waiver of such privilege must be a voluntary one, and free from all duress, fear, intimidation, and coercion; that is, he must not be induced or compelled to make his plea of guilty by reason of threats, or in any way forced to do so. In other words, his plea must be free and voluntary."

The court informed the petitioner as to the consequences of his plea of guilty before it was entered and clearly ascertained that it was his desire to enter such plea. Before pronouncing sentence the court sought to have the petitioner repeat the details of the crime. He willingly and intelligently answered many questions leading up to and including his intercourse with the deceased. The court then asked, "And after that was over what happened next?" The petitioner answered, "Everything I done and did is written in my confession. I have told it before—everything." The court asked for further details regarding the crime but the petitioner refused to answer. Thus he affirmed the statements made in his confession.

The court asked the State's Attorney and Sheriff many questions regarding the circumstances surrounding the crime and particularly with reference to the petitioner's conduct and statements immediately after its commission. The court had in mind the very questions now raised by the petitioner as to his intoxication and its effect on his capacity to form a willful, deliberate and premeditated intent to kill. The court stated, "The reason I am asking for these details is to develop as far as we may the defendant's state of mind in (and) his ability to distinguish right and wrong and know what he was doing."

Counsel for petitioner complains that the statements of the officials thus made were not under oath and were largely hearsay. This otherwise valid criticism is overcome by the recitals of the petitioner himself and by his assent in open court that the statements of these officials were substantially true.

Thus it appears that the court considered the petitioner's mental capacity to commit murder in the first degree and his acceptance of the plea of guilty and the sentence that he pronounced thereon indicates that he considered that the plea was proper under the circumstances. If the court erred in this determination such error was reviewable on appeal.

There is nothing in the record to indicate a hostile attitude on the part of anyone in the courtroom. In fact, the prosecuting officers as well as the court assumed a friendly attitude. There was no intimidation or deceit. Should counsel have advised his client to plead not guilty? Should the court have declined to receive the plea of guilty and ordered the petitioner tried before a jury? Clearly neither of these questions goes to the jurisdiction of the court, nor would affirmative answers to them establish that the petitioner was not accorded due process of law. The petitioner, without duress, voluntarily entered his plea of guilty and thereby waived the constitutional and statutory rights to which he, as one accused of crime, was entitled. He may not assert them in this proceeding.

It is argued that nowhere in the proceedings did the defendant designate in his plea that he was guilty of murder in the first degree. In support of this point he cites State v. Noah, 20 ND 281, 124 NW 1121. Section 12–2722, Rev Code ND 1943, provides that:

"Whenever any person prosecuted for murder or manslaughter pleads guilty, he shall designate in his plea whether he is guilty of murder in the first degree or in the second degree, or of manslaughter in the first degree or in the second degree, and if said plea is accepted, the court shall determine the punishment to be inflicted therefor within the limits prescribed by law and shall enter judgment against such person in accordance with such determination. The court, in its discretion, may

examine witnesses to aid in the determination of the punishment to be inflicted or submit the case to a jury to determine the punishment, or in its discretion, may refuse to receive a plea of guilty and may submit the whole case to a jury."

In State v. Noah (ND) supra, it was held that where the information charged murder in the first degree this Section was not complied with by a plea of a defendant that he was "guilty as charged in the information" and in order to comply with the statute the plea should be positive and definite as to degree and any indefiniteness in respect to the degree of the crime is not remedied by reference to the information in cases where the offense is divided into degrees.

The contention with reference to the indefiniteness of the plea is untenable under the record in this case. Reference to the portion of the proceeding heretofore quoted shows that the petitioner did not plead in the manner held ineffective in the Noah case but specifically pleaded guilty to murder in the first degree as charged in the information. Thus the degree was clearly indicated. The fact that the degree was indicated in the question of the court to which the petitioner repeated, "Guilty", does not make it less definite. The statute does not contemplate that the accused must repeat in his own words the degree of the crime to which he pleads guilty. We, therefore, hold that the plea was sufficient as to form.

The application for a writ of habeas corpus is denied.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.

MORRIS, J. On application for rehearing. In an application for a rehearing the petitioner emphasizes the fact that he seeks "an appropriate writ" and complains of our treatment of his application as one for a writ in the nature of habeas corpus, it being his declared intention to allow this court to determine whether certiorari, habeas corpus or some other appropriate writ should issue in event that the petitioner was entitled to relief. The authorities cited in the brief filed in support of his

application set forth only cåses involving habeas corpus proceedings or direct appeals. The cases which he cites in his application for a rehearing fall in these same categories.

It is well settled in this state that certiorari to an inferior court does not lie unless that court has exceeded its jurisdiction and there is no appeal or other plain, speedy and adequate remedy available to the petitioner. State ex rel. Enderlin State Bank v. Rose, 4 ND 319, 58 NW 514, 26 LRA 593; State ex rel. Clyde v. Lauder, 11 ND 136, 90 NW 564; Baker v. Lenhart, 50 ND 30, 195 NW 16; State ex rel. Claver v. Broute, 50 ND 753, 197 NW 871; State ex rel. Noggle v. Crawford, 24 ND 8, 138 NW 2. See also State ex rel. Wehe v. Frazier, 47 ND 314, 182 NW 545.

In our original determination of this matter we inquired into the correctness of the judgment of the trial court only to the extent of determining whether it acted within its jurisdiction. To our determination that the trial court did so act we now adhere. The petitioner is thereby precluded from obtaining the writ that he seeks by whatever name we may choose to call it. In essence, he seeks a writ in the nature of habeas corpus. Such a writ by any other name is subject to the same rules and limitations that we have heretofore set forth.

Rehearing denied.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.

Cert den 333 US 857, 92 L ed 1137, 68 S Ct 727.