William **DANIELSON**, Petitioner,

v.

Irvin **RIEDMAN**, Warden, North Dakota State Penitentiary, Respondent.

Civ. No. 268.

United States District Court
N. D. North Dakota.
Southwestern Division.

Sept. 25, 1959.

Paul Sand, Asst. Atty. Gen., and Gerald W. Vande Walle, Sp. Asst. Atty. Gen., for respondent.

———◇———·

REGISTER, Chief Judge.

This petition for writ of habeas corpus presents a challenge to a burglary judgment in the District Court of Cass County, First Judicial District, State of North Dakota, of January 14, 1957.

William Joseph Danielson, hereafter referred to as "petitioner", an inmate of the North Dakota State Penitentiary pursuant to and in execution of such judgment, presented to this Court a self-prepared petition. Subsequently, in accordance with his "Petition for Forma Pauperis", this Court issued its Order permitting the petitioner to prosecute his petition for writ of habeas corpus in forma pauperis, and directing the filing of such petition by the Clerk without the prepayment of filing fees.

The body of the "Petition for Habeas Corpus" is as follows:

"Grounds for Petition: (1) I, William Danielson, your petitioner, states, he is being held to involuntary servitude by the above named Respondent, Irvin Riedman, Warden, North Dakota State Prison.

"(2) Wherefore, your petitioner was deprived due process of Law under Articles VI and XIV of the Constitution of the United States.

"(3) Whereas, your petitioner was at no time represented by Council, and at no time did your petitioner waive his right to Council.

"(4) Your petitioner offers in evidence the *complete transcript* of said proceedings, which concretely and without element of doubt, bears out the above statements.

"Petitioner's Plea for Legal Redress. Comes now your Petitioner, William Danielson, who prays this Honorable Court for immediate relief, and alleviation of the wrongful and Illegal judgment and that his freedom be restored, according to the Laws of the United States of America."

Accompanying such Petition was the "complete transcript of said proceedings" therein referred to. Also accompanying such petition was a letter from the Clerk of the Supreme Court of this State, dated April 8, 1959, informing petitioner as follows:

"Your petition for the issuance of a writ of habeas corpus was duly re-

ceived, filed and presented to the Court. The Court on April 6th entered its order denying the application for a writ."

On September 14, 1959, this Court issued its Order to Show Cause, directed to the above-named respondent, ordering him to show cause before this Court, at a specified time and place, why the writ prayed for by the petitioner should not be granted. Prior to the time specified, a written Return was duly made and filed by said respondent and, at the specified time and place said respondent appeared by Mr. Paul Sand, Assistant Attorney General, and Mr. Gerald W. VandeWalle, Special Assistant Attorney General, of the State of North Dakota. Such return consisted, in part, of respondent's affidavit, of certified copies of Judgment and Commitment in the state court, of the Information upon which petitioner was prosecuted, of petitioner's FBI fingerprint record, of the minutes of the Supreme Court of North Dakota of proceedings had on April 6, 1959 (wherein the application for the issuance of a writ of habeas corpus on behalf of petitioner was denied), and the respondent's brief.

Because the petitioner based his petition and claim for relief upon lack of representation by counsel in the state court (allegedly without waiver of right of such representation), and submitted a complete transcript of the proceedings therein, this Court deemed it advisable to issue an Order to Show Cause rather than an Order requiring the attendance of petitioner and taking of testimony at a hearing attended by him.

Petitioner was arraigned on January 14, 1957, in the District Court of Cass County, First Judicial District, State of North Dakota, upon a criminal information charging him with burglary. Prior thereto, and on January 3, 1957, petitioner had had a preliminary examination on such charge in the County Court of said county, as a result of which he was bound over for trial to the District Court. Bail was set and in default thereof petitioner was remanded to the custody of the county sheriff. At the time of the arraignment in District Court, the Honorable John C. Pollock presiding, the Court fully advised petitioner of his right to counsel. Petitioner informed the Court that he would like to consult a lawyer, but had neither money nor property. The Judge thereupon stated: "The Court: The court will appoint an attorney for you and continue the matter until 10 o'clock a week from today, which will be the 21st." Of course, at that time, petitioner had not entered a plea to the charge contained in the information. Within a few minutes after petitioner's first appearance in District Court, according to the transcript, he reappeared therein with Mr. Huseby, the State's Attorney of said Cass County, and the following occurred:

"Mr. Huseby: At this time I ask you, Mr. Danielson, the defendant in this case, did you wish to change your plea? Defendant: Yes, sir.

"Q. Did you wish to change it from not guilty to guilty? A. Yes.

"Mr. Danielson, in changing your plea it was not made under any threats or coercion, was it? A. No.

"Q. It is voluntary on your part? A. Yes.

"The Court: I understand then, Mr. Danielson, at the present time your plea is guilty? A. Yes.

"Q. Is there any legal reason why sentence should not be imposed upon you at this time? A. No, not that I know of."

Judge Pollock then questioned the petitioner concerning his residence and past record (which was substantial). The Judge then inquired of the State's Attorney as to his recommendation. After making some statements as to the effects of cutting off narcotics from an addict, the defendant's sickness as a narcotic, and the desirability of his getting treatment for this condition, Mr. Huseby stated to the Court:

"I think the maximum penalty for this charge is ten years. I told Mr. Danielson if he wanted to voluntarily plead guilty I would recommend a sentence of from three to five years,

and at this time I will make that recommendation. Is that correct, Mr. Danielson? Defendant: Yes."

After some further questions and answers, sentence was pronounced in accordance with the recommendation.

The record of the proceedings of which petitioner complains and upon which his claim for relief is based establishes as a fact, and this Court so finds, that after being fully informed of his right to counsel, of the Court's willingness to and intention of appointing such counsel, defendant himself voluntarily reappeared in Court without waiting for such appointment, voluntarily entered a plea of guilty to the charge, stated to the Court that he knew of no legal reason why sentence should not then be imposed, heard the recommendation of the State's Attorney (of which petitioner had previous knowledge, according to his own statement), and the Court imposed sentence specifically in accordance with such recommendation.

It is petitioner's contention that he is being held to involuntary servitude by the respondent; that he was deprived of due process of law under Articles VI and XIV of the Constitution of the United States; that he was at no time represented by counsel; and that he at no time waived his right to counsel; and that the transcript of the proceedings bears out his contentions.

The jurisdiction of this Court to release State prisoners confined contrary to provisions of the Federal Constitution has not been challenged in this case. Respondent does assert that petitioner has not shown exhaustion of his remedies in the state courts. However, this Court will consider the letter from the Clerk of the Supreme Court of North Dakota as a part of the petition, and this, together with the certified copy of the minutes of the Supreme Court which constitutes a part of respondent's Return herein, establishes as a fact that petitioner's application for a writ of habeas corpus to that court was denied. Respondent does not contend that certiorari must be applied for in the United States Supreme Court before habeas corpus is sought in the Federal District Court. Therefore, the normal rule as to that procedure and requirement (see Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791) and the circumstances under which some flexibility exists concerning the same, and under which the Federal District Judge may exercise some discretion relative thereto will not be discussed. See Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863, and United States ex rel. Williams v. LaValle, D.C., 170 F.Supp. 582.

Title 28, Section 2254, United States Code Annotated, provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

This Court will consider, for the purpose of this petition, that petitioner has exhausted all remedies which were available to him in the state courts.

■ It is well established practice in habeas corpus cases that where the facts alleged by the petitioner obviously constitute no proper basis for the issuance of the writ, the court may, and should, decline to issue the same. See Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, at page 578, 85 L.Ed. 830, where, in the opinion by Mr. Justice Roberts, it is said:

"It will be observed that if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue."

Petitioner alleges that he was deprived of due process of law under Articles VI and XIV of the Constitution of the United States. Petitioner contends, in effect, that failure on the part of Judge Pollock to appoint counsel for him in state court deprived him of his constitutional right to due process of law.

■■ It should be noted that Article VI pertains solely to proceedings had in United States Courts. Article XIV, Section 1, in part provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person the equal protection of the laws." This provision does not require that a defendant in a state court must be represented by counsel.

Section 13 of the North Dakota Constitution provides as follows:

"In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

In Gall v. Brady, D.C., 39 F.Supp. 504, 513, a case very similar to the instant one, the Court stated:

"The 6th Amendment, as one of the first eight amendments to the Federal Constitution, is not specifically a limitation upon State action, and does not of itself determine the scope of the phrase 'due process' in the 14th Amendment, except to the extent that there is implicit in the latter the concept of ordered liberty."

The Supreme Court of North Dakota has had occasion to consider this question. In Mazakahomni v. State, 75 N.D. 73, 25 N.W.2d 772, 776, the Court said:

"The provisions of the Sixth Amendment of the United States Constitution guaranteeing to a defendant in a criminal case the privilege to appear by counsel and the guarantee of due process of law under the Fifth Amendment are not limitations upon the powers of states but operate upon the Federal Government only and apply to trials in the Federal Courts. The due process clause of the Fourteenth Amendment, identical in language to that of the Fifth, is applicable to the states and to due process of law as administered by state courts. * * *

"Our Constitution does not require that counsel shall be furnished by the state if the defendant appears without one. The statute, however, Sec. 29–1303, R.C.N.D.1943, requires the assignment of counsel by the court if the defendant desires and is unable to employ counsel. The right to assignment of counsel springs from the statute and not from the Constitution."

■ The transcript submitted by petitioner conclusively establishes exactly what took place in the state court. In this Court's opinion, this record establishes as a fact that the court neither denied nor refused to appoint counsel for petitioner but that, after petitioner had been fully advised of his right to counsel, and after the Court advised him that he would appoint counsel for him, the petitioner understandingly, freely, voluntarily and without improper inducement entered a plea of guilty to the charge against him, the legal effect of which waived the appointment of counsel.

"Where an accused personally enters a plea of guilty to a crime whereof he stands charged, and does so understandingly, freely and voluntarily without asking the assistance of counsel, a waiver of the right to be represented by counsel may fairly be inferred." Cundiff v. Nicholson, 4 Cir., 107 F.2d 162, 163.

The petitioner has a long criminal record. According to the FBI report presented, this is the seventh felony conviction for petitioner. In addition, he has been convicted of many misdemeanors. This record encompasses many years. Petitioner is thoroughly familiar with courtroom procedure, and with his constitutional and statutory rights. Familiarity therewith is even evidenced by the transcript of the proceedings at the time of preliminary examination before the County Court—which transcript has been presented by petitioner. This is not a case of a young, inexperienced youth, emotionally in turmoil because of an unusual situation. It is significant that, according to the record, the petitioner and prosecutor had discussed not only the advisability of confinement of the petitioner because of his physical condition (due to narcotic addiction) but the specific recommendation which the prosecutor would make as to length of sentence. It is also significant that the sentence imposed was in accord with such recommendation. No misunderstanding appears on the part of the petitioner, and there is no evidence whatever of improper inducement. This Court also deems it significant that the petition herein was not filed until nearly two years and eight months after the action complained of.

While it may be that the presiding Judge, as a matter of precaution, should have again inquired of petitioner immediately prior to his entering the plea of guilty concerning the appointment of counsel, yet this matter had been gone into thoroughly just a few minutes prior thereto, and the Judge, under all the circumstances, was justified in assuming that petitioner by implication had waived his right to counsel. This Court so finds. Looking at the proceedings as a whole, I am of the opinion that this case was disposed of in accordance with that concept of due process of law which is implicit in the 14th Amendment. This is the ultimate question herein.

The Court concludes that under the circumstances here existing, petitioner has not been denied any federal constitutional right.

The Order to Show Cause is vacated and the Petition for Writ of Habeas Corpus is denied.

It is so ordered.