Wilson R. SMITH, Petitioner,

v.

J. D. WOODLEY, Warden of the State Penitentiary, Bismarck, North Dakota, Respondent.

Cr. No. 372.

Supreme Court of North Dakota.

Jan. 24, 1969.

Gerald G. Glaser, of Wolf, Glaser & Milhollan, Bismarck, for petitioner.

Gordon O. Hoberg, State's Atty., Napoleon, and Gerald W. VandeWalle, Asst. Atty. Gen., Bismarck, for respondent.

PAULSON, Judge.

Wilson R. Smith has petitioned this court for a writ of habeas corpus, pursuant to Chapter 32–22 of the North Dakota Century Code. A prior petition presented to the district court of Burleigh County, North Dakota, was quashed on August 22, 1968, after a hearing before District Judge Clifford Jansonius. Smith was charged with the crime of grand larceny of a tractor during the year 1966. Prior to the preliminary hearing, Smith, being an indigent, asked for the appointment of counsel to represent him, specifically requesting the court to appoint Theodore F. Kessel of LaMoure. The district judge appointed Mr. Kessel as petitioner's attorney. Mr. Kessel acted as Smith's attorney at the preliminary hearing and all during the trial of the action before a jury in Logan County district court. Smith was convicted of grand larceny and was sentenced to a term of ten years in the State Penitentiary at Bismarck on October 11, 1966. Smith's at-

torney, shortly thereafter, moved the trial court for an order granting a new trial, alleging newly discovered evidence. The district court denied such motion. An appeal from such order was perfected and the order denying the new trial was affirmed by this court. The opinion in State v. Smith, N.D., 153 N.W.2d 691 (1967) contains most of the pertinent facts brought forth at the trial.

Smith has been in the custody of the warden of the State Penitentiary continuously since his commitment in October of 1966.

Smith now asserts that the conviction, judgment, sentence, and commitment are defective and void, within the purview of Section 32–22–17(3) of the North Dakota Century Code, for the following reasons: that he was denied a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and of Section 13 of the North Dakota Constitution, because his counsel did not secure the testimony of material witnesses for and in his behalf.

While Smith's present court-appointed counsel has directed his argument toward the issue of whether or not there was a fair trial, the underlying determinative issue is whether or not Smith was adequately represented by his attorney commencing with the time of his appointment and particularly during the criminal trial in district court. Smith claims he was not so represented and he was therefore denied a fair trial, and thus the judgment is void within the scope of Section 32–22–17(3), N.D.C.C.

Section 32–22–17(3), N.D.C.C. provides:

"Causes for discharge of person restrained.—If it appears on the return of the writ that the party is in custody by virtue of process from any court of this state, or any judge or officer thereof, such person may be discharged in any of the following cases, subject to the restrictions of section 32–22–02:

\* \* \* \* \* \*
"3. When the process is defective in some matter of substance required by law rendering such process void; \* \*"

The pertinent provision of the Fifth Amendment of the United States Constitution provides:

"No person shall \* \* \* be deprived of life, liberty, or property, without due process of law; \* \* \*"

The material provision of the Sixth Amendment of the United States Constitution applying to the instant case provides:

"In all criminal prosecutions, the accused shall enjoy the right \* \* \* to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

The Fourteenth Amendment of the United States Constitution insofar as it is material to this case provides:

"\* \* \* No State shall \* \* \* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 13 of the North Dakota Constitution provides:

"In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall \* \* \* be deprived of life, liberty or property without due process of law."

■ Before entering upon a discussion of the issues presented as a result of the filing of this petition, we are not unmindful of the recent decision of this court in Fournier v. Roed, N.D., 161 N.W.2d 458 (1968), particularly paragraph 1 of the syllabus, which states:

"1. In light of the law of the writ of habeas corpus as it has developed, when

a petitioner alleges in his application for a writ of habeas corpus that he has been restrained of his liberty in violation of the Constitution or the laws or the treaties of the United States, this court will review that allegation on a writ of habeas corpus in order to determine whether the petitioner is being restrained in violation of fundamental law, entitling him to his release."

Accordingly, a review of the petitioner's proceeding will be necessary. The remainder of the *Fournier* decision, however, has no application to the present proceeding. The petition for a writ of habeas corpus in *Fournier* alleged an illegal detention, in violation of Section 33–22–17(2), N.D.C.C. Wilson R. Smith's application is based upon whether his is a void judgment, pursuant to Section 32–22–17(3), N.D.C.C.

■■■ This is the first habeas corpus case in this State to require a direct decision on the question of inadequacy of counsel at trial. The issue was presented but was not decided in Mazakahomni v. State, 75 N.D. 73, 83, 25 N.W.2d 772, 778, cert. denied 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1947). The right to effective assistance of counsel at trial is guaranteed by the Sixth Amendment of the United States Constitution and applies to trials in State courts through the Fourteenth Amendment of the United States Constitution. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963). Lack of counsel at trial will render a judgment void and require reversal of a conviction. State v. Magrum, 76 N.D. 527, 38 N.W.2d 358 (1949). Ineffective, incompetent, or inadequate representation is the same as no counsel at all, and, as such, will equal a denial of due process. State v. Keller, 57 N.D. 645, 223 N.W. 698, 64 A.L.R. 434 (1929). From these rules, therefore, it logically follows that if counsel at the trial is so inadequate as to be equal to no counsel at all, a judgment may be rendered void and, hence, a jurisdictional defect may arise which is reviewable by habeas corpus. 39 Am.Jur.2d, Habeas Cor-

pus § 53; Scalf v. Bennett, 147 N.W.2d 860 (Iowa 1967).

■■■ The books in the law libraries are replete with cases alleging incompetency or ineffective assistance of counsel at trial. These cases uniformly hold that the proof of the effectiveness of such assistance lies in the character of the resultant proceedings, and unless the purported representation by counsel was such as to make the trial a farce and mockery of justice, mere allegations of incompetent or ineffective counsel ordinarily will not suffice as grounds for the issuance of a writ of habeas corpus or for the reversal of a conviction. 74 A.L.R.2d 1390; 21 Am.Jur.2d, Criminal Law § 321; 39 Am.Jur.2d, Habeas Corpus § 53. A lack of effective assistance of counsel must be such as to shock the conscience of the court and make the proceedings a farce and mockery of justice. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), cert. denied 325 U. S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002; State v. Keller, 57 N.D. 645, 223 N.W. 698, 64 A.L.R. 434 (1929).

We now turn to the allegations of the petitioner relating to defense counsel's failure or refusal to subpoena Glen Smith and John Erickson, whom petitioner claims were material witnesses, or to otherwise obtain their testimony.

The record of the habeas corpus hearing in the district court discloses that, sometime before the trial, Smith furnished his attorney with the names of possible witnesses, including Glen Smith and John Erickson. Neither of these witnesses resided in North Dakota. Petitioner urges that Mr. Kessel should have subpoenaed, or at least taken the deposition of, Glen Smith, petitioner's brother. The record of the habeas corpus hearing further reveals that Mr. Kessel did interview Glen Smith prior to trial. Glen Smith promised to appear but on the day before the trial, when Mr. Kessel attempted to contact him by telephone to remind him to appear, it was discovered that he had apparently moved

from Benson, Minnesota, to Aberdeen, South Dakota. Glen Smith was not located for a period of several months, at which time he executed an affidavit which stated that Wilson Smith's truck was in the vicinity of Aberdeen, South Dakota, all day on May 30, 1966, the day petitioner was alleged to have been in Minnesota with a truck transporting the stolen tractor. Mr. Kessel, at the hearing, stated that he believed that Glen Smith's testimony was material and that he desired to have him present at the trial. The record further discloses the following colloquy in the examination of Mr. Kessel:

"Q. Now, a little while ago when I quoted that statement of yours in the transcript, you said that you had had some conversation with Mr. Smith at the conclusion of the presentation of your evidence. Did that conversation relate to the matter of the missing witnesses, John Erickson and Glen Smith?

"A. It did as far as Glen Smith was concerned.

"Q. Insofar as Glen Smith was concerned?

"A. Yes.

"Q. Can you relate what the conversation was?

"A. Well, we discussed whether or not his testimony would be of any additional value and one of the points that I brought out to him and one of the things that was bothering me was the fact that Glen had been arrested and entered a plea of guilty to grand larceny on the same tractor and in my discussion with him—

"Q. Hold it a minute, you said the same tractor?

"A. Same tractor. And in my discussion with Glen at the time I saw him in Benson, I asked why he entered a plea of guilty and he said because he felt he was an accessory to it.

And with this in mind at the time, I hesitated very much even if he had appeared whether I should put him on the stand. And so in talking this over with Wilson after the trial, we rested rather than go any further in the matter. This is one of the facts that I had to consider. And I feel that has to be brought out here now in view of the fact that my competency and judgment in the trial of the matter is being, evidently from what I hear, set up as very improper. These are the things I was confronted with and we discussed this."

█ The desirability of using Glen Smith's testimony at the trial was clearly a matter of trial strategy. We will not superimpose our collective judgment upon that of a trial counsel who has evaluated his client and witnesses, present or prospective, on so tactical a decision as to whether a witness should testify. There are numerous reasons why a defense lawyer may choose to keep his client's witnesses off the stand. Second-guessing on this matter by a disappointed defendant is to be discouraged, lest members of the bar become reluctant to represent indigent defendants for fear of future unwarranted attack.

█ Mr. Kessel further testified at the hearing that he was aware of the nature of John Erickson's testimony. John Erickson was the owner of a service station in Aberdeen, South Dakota, to which Wilson Smith brought his automobile at approximately 10:30 a. m. on May 29, 1966. It appears that the theft of the tractor took place between 12:30 p. m. and 1:30 p. m. of that day. Wilson Smith borrowed Erickson's automobile and returned to the station at approximately 3:30 p. m., at which time he secured his own automobile on which Erickson had mounted several new tires. Mr. Kessel testified that he had attempted to interview Mr. Erickson on several occasions while counsel was in Ab-

erdeen, South Dakota, investigating the case. Mr. Kessel's attempts were unsuccessful and, on September 24, he discovered that John Erickson had left Aberdeen three days before the scheduled trial on an elk-hunting trip in Wyoming. Petitioner also urges that Mr. Kessel was derelict either in failing to secure the live testimony of John Erickson, or in not utilizing the provisions of Sections 31–03–28 or 31–06–13, N.D.C.C., which testimony would have tended to corroborate the alibi defense of Wilson Smith. Mr. Kessel concedes he was aware of those statutory provisions. The allegation is without merit because Mr. Kessel, during the course of the trial, *introduced into evidence receipts issued by* John Erickson which disclosed facts similar to those to which John Erickson would have testified had he been personally present at the trial. The record discloses the following examination of Mr. Kessel:

"Q. * * * In any event, Judge Schneller was of the opinion and so were you, that he [Wilson R. Smith] did a poor job on the witness stand?

"A. I would say so, yes sir. For further explanation, as far as John Erickson is concerned, we had the defendant's exhibits as to the receipts and when they were issued and where they were issued.

"Q. You're going to have to explain what you are talking about.

"A. The receipts issued by John Erickson at Aberdeen, the gas receipts and the tire receipts, and so on. And had we not had them I would have felt that Mr. Erickson's testimony was very, very necessary. But with those, I felt we had sufficient evidence to complete the case and I think I can refer to Defendant's Exhibits A, B, C, D, E, F, G and H, which are credit cards, the last three. We also had the two Berreths who were very good alibi witnesses and if the transcript is read, they showed antagonism to-

ward this defendant even though they were relatives. And based on those things, we just felt that we were in a good position to win this case.

"Q. Even assuming, Mr. Kessel, even assuming that that is true, would you not have been in an even a better position to get a favorable verdict had these two people been present and testified?

"A. That is very possible, I couldn't deny that. As I look back now, I'd probably find other things that I would do differently. * * *"

It is obvious from Mr. Kessel's testimony that he was accomplishing the necessary objective, that of establishing facts to support the defense of alibi, by the use of the receipts rather than the actual testimony of John Erickson. We believe counsel's decision was a matter of trial tactics and we are therefore reluctant to criticize the decision of Mr. Kessel.

The right to compel the attendance of witnesses is guaranteed by Section 13 of the North Dakota Constitution. However, the method of conducting a defense in a criminal trial is, of necessity, determined by the attorney, after consultation with his client. The ultimate responsibility for tactical decisions rests upon trial counsel and not upon the defendant. A defendant is generally bound by these decisions and unless they so affect the defense as to deny the defendant a fair trial, this court will accept the trial counsel's considered judgment. State v. Keller, supra. Since Wilson Smith has failed to prove that these decisions so affected his trial, we find that there was no violation of the due process guaranteed by Section 13 of the North Dakota Constitution.

Petitioner also urges that had this further corroboration been presented by witnesses physically in court, sufficient doubt might well have been created in the jurors' minds to secure an acquittal and

Smith suggests that the one certain way to resolve the question is to have a re-trial of this case. The probable guilt or innocence of Petitioner Smith is beyond the scope of habeas corpus. Our decision here is limited to whether the conduct of Wilson Smith's counsel was so derelict in meeting the issues presented as to deny Smith a fair trial. We find that Mr. Smith has failed to bear the heavy burden of showing that his attorney's handling of the defense was so inadequate as to deny Wilson Smith the due process of law and his right to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and by Section 13 of the North Dakota Constitution. 39 Am. Jur.2d, Habeas Corpus § 152.

Therefore, since Wilson Smith has failed to bear the burden of showing that his conviction and judgment are void within the meaning of Section 32–22–17(3), N.D. C.C., the mandate of Section 32–22–02(2), N.D.C.C., that a writ may not be issued when the petitioner is committed pursuant to a valid judgment, compels this court to grant the State's motion to quash the writ of habeas corpus. The writ of habeas corpus is hereby quashed.

TEIGEN, C. J., and STRUTZ, ERICK-STAD and KNUDSON, JJ., concur.