Richard J. Cardamone, J.
This court issued a writ of habeas corpus (Vinette, J.) on April 23,1965 directing the respondent Sheriff of Onondaga County to deliver the relator, Kenneth E. Dudley, before this court at its Special Term for Motions in Onondaga County on May 3,-1965 to inquire into the cause of relator’s detention.
Belator is presently detained in the Onondaga County Jail in Syracuse, New York, pursuant to a commitment (Bench Warrant) dated August 2, 1963 as the result of an indictment charging relator with the crime of murder in the first degree. On August 5, 1963 this court (Farnham, J.) issued a certificate of extradition to the Virginia penal authorities where relator was confined in the Virginia State Penitentiary, Bichmond, Virginia, serving a 20-year sentence, having been convicted of murder in the second degree in that State on February 7, 1963. The certificate was approved on August 7, 1963 by the Hon. A. S. Harrison, Jr., Governor of the State of Virginia, as required by section 53-303 of the Code of Virginia. On August 12, 1963, relator was turned over by the prison authorities of the State of Virginia to law-enforcement officers of New York State and was transported to Onondaga County, New York. At that time relator was arraigned and placed in the custody of the Onondaga County Sheriff where he still remains. Prior legal proceedings (Matter of Dudley v. Ryan, 21 A D 2d 753 [4th Dept., 1964], mot. to dismiss app. den, 15 N Y 2d 551 [1964], affd. 15 N Y 2d 627 [1964]) have consumed close to two years. Belator has now been directed to proceed to trial in the County Court in Onondaga County. An application for a stay of the trial made to this court on May 3, 1965 was denied as was a similar application made to the Federal District Court for the Northern District of New York (Brennan, J.) on May 5, 1965.
In the pending proceeding relator alleges that custody of his body was illegally obtained. He asserts' that the statute of the State of Virginia (Va. Code, § 53-303), under which his custody was obtained, is unconstitutional. Belator asserts that he had asylum in the State of Virginia and that his delivery to the custody of law-enforcement officials of New York State without extradition proceedings or his waiver of them was a violation of his rights under subdivision 2 of section 2 of article IV of the United States Constitution as well as a violation of section 3182 of the Federal Criminal Code (U. S. Code, tit. 18, § 3182). Bespondent denies any violation of relator’s constitutional rights and states that custody of him was lawfully obtained.
*207 Relator’s principal assertion is that there is no jurisdiction to try him in the courts of New York State since his presence here was obtained illegally. An analysis of the law of Virginia reveals that the code of that State (§ 53-303) permits the release of a prisoner in the, custody of the Director of Prisons upon the certificate of a Judge of a court of record in a demanding State that the prisoner has been indicted in that State. Under such circumstances, with the approval of the Governor of the State of Virginia, the prisoner may be delivered to the officer presenting the certificate. This is procedure which was followed by the District Attorney of Onondaga County. All of the statutory requirements under section 53-303 were met.
Relator urges this court to declare this statute of the State of Virginia (§ 53-303) unconstitutional. Section 1 of article IV of the United States Constitution provides that “ Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State.” This court is, therefore, bound by the public act (§ 53-303) of the State of Virginia and may not question its validity. (Bradford Elec. Co. v. Clapper, 286 U. S. 145 [1932].)
Relator also alleges a violation of section 3182 of the Federal Criminal Code, the pertinent parts of which provide: ‘ ‘ Whenever the executive authority of any State * * * demands any person as a fugitive from justice, of the executive authority of any State # * * to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State * * * charging the person demanded with having committed [a] * * * felony, or other crime, certified as authentic by the governor or chief magistrate of the State * * * from whence the person so charged has fled, the executive authority of the State * * * to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand * * * to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.” But extradition from one State to another need not necessarily be in accordance with the provisions of section 3182 whose provisions are not exclusive. (Innes v. Tobin, 240 U. S. 127 [1916].) There may be a wider application of extradition by State law so that one State on a theory of comity may honor the process of another State in the extradition of a prisoner. (United States ex rel. Moulthrope v. Matus, 218 F. 2d 466 [C. A. 2d, 1954].) ‘‘A State may enact legislation to supplement the Federal statute by permitting extradition in less exacting terms than those imposed by the * * * statute [§ 3182] ” (People *208 eax rel. Matochik v. Baker, 306 N. Y. 32, 37 [1953]). The delivery of relator by the State of Virginia to the custody of respondent in the State of New York pursuant to the statute of the State of Virginia (§ 53-303) did not violate the Federal statute (TJ. S. Code, tit. 18, § 3182).
Finally, relator urges that extradition from one State to another must comply with the provisions of the United States Constitution (art. IV, § 2, cl. 2) providing that: “ A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall oh demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.” Relator contends that because there was no executive demand from New York but merely a court warrant his constitutional rights were violated.
Section 2 of article IV is to be liberally construed, however, to assure co-operation by one State with another in bringing to speedy trial persons accused of a crime by preventing their finding in one State an asylum against the processes of justice in another. It is for this reason that the various States in the spirit of courtesy, co-operation, and comity surrender prisoners held within their own jurisdiction to the jurisdiction of other States to stand trial for a crime charged in another State. The penitentiary in the State of Virginia should not be a place of sanctuary giving relator immunity from trial in New York State. (People ex rel. Rainone v. Murphy, 1 N Y 2d 367, 371, 372 [1956].) Section 2 of article IV was adopted to promote justice and to aid States in enforcing their laws and not to shield criminals. (Morgan v. Horrall, 78 F. Supp. 756 [1948], affd. 175 F. 2d 404 [1949], cert. den. 338 U. S. 827 [1949].)
Regardless of how the personal presence of the relator was obtained in Onondaga County, the jurisdiction over his person for the purpose of proceeding with this trial cannot now be questioned. (Frisbie v. Collins, 342 U. S. 519 [1952]; Ker v. Illinois, 119 U. S. 436 [1886].) A person accused of a crime and produced in the jurisdiction where he is so charged and held under processes legally issued from a court of that jurisdiction cannot attack the jurisdiction of the court nor its right to try him because of the manner in which he was produced before that court. It makes no difference whether it be by force, kidnapping, illegal arrest, abduction, or faulty, incomplete or irregular extradition proceedings. (Ker v. Illinois, supra.) This is an almost universal rule of law. (Ann. 165 A. L. R. 947.) The relator’s removal from the State of Virginia without extra *209 dition papers and without his waiver of extradition does not violate any of his constitutional rights. (Hanovich v. Sacks, 290 F. 2d 798 [C. A. 6th, 1961], cert. den. 368 U. S. 863 [1961]; Thompson v. Bannan, 298 F. 2d 611, 612 [C. A. 6th, 1962], cert, den. 370 U. S. 957 [1962].) This is the same view taken by the courts of this State. (Balbo v. People, 80 N. Y. 484, 499 [1880]; People v. Eberspacher, 79 Hun 410; People v. Dileo, 194 App. Div. 793 [4th Dept., 1920].)
Accordingly, the writ is now dismissed.